United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID FULGHAM,<br><br>Defendant. | Case No.: CR 12-0124 CW (KAW)<br><br>DETENTION ORDER |

## I. BACKGROUND

Defendant David Fulgham was charged in a one-count indictment with possession with intent to distribute MDMA in violation of 21 U.S.C. § 841(a)(1) and (b)(1)C. On March 6, 2012, Defendant waived the timing of his right to proffer information at a detention hearing, *see* 18 U.S.C. § 3142(f), and also waived findings, while retaining his right to seek release at a later hearing should his circumstances change. Magistrate Judge Beeler ordered that Defendant be detained but that the detention hearing could be reopened at his request at a later date.

 On June 15, 2012, Judge Wilken held a hearing on Defendant's motion to suppress 8,000 ecstasy pills found in his luggage at the Oakland International Airport. *See* Dkt #21 at 31:2-31:3. Judge Wilken granted the motion to suppress, and Defendant then moved to be released from custody. *Id.* at 34:5-34:9. Judge Wilken ordered a detention hearing to be scheduled. *Id.* at 35:1-35:4.

On June 18, 2012, the government filed a memorandum asking that the Defendant be detained while the government decided whether to appeal the grant of the suppression motion. Dkt #22. On June 21, 2012, Defendant filed a memorandum arguing that he should be released from custody. Dkt #23.

On June 27, 2012, the government filed a notice of appeal of Judge Wilken's grant of Defendant's suppression motion.

On June 28, 2012, Pretrial Services prepared a full bail study, which recommended that Defendant be detained. The undersigned held a detention hearing on June 29, 2012. Assistant United States Attorney Aaron Wegner appeared on behalf of the Government. Defendant was present and in custody, and represented by counsel Jerome Matthews. For the reasons stated below, the Court orders that Defendant be detained while the government's appeal is pending.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

Where, as here, the United States has filed an appeal pursuant to 18 U.S.C. § 3731, Defendant's release or detention pending the resolution of the appeal should be determined according to the standards set forth in 18 U.S.C. § 3142. *See* 18 U.S.C. § 3143(c). That statute provides that a person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any

conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407. The Ninth Circuit has held that the weight of the evidence should be treated as the least important factor. This guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Motamedi*, 767 F.2d at 1408. "The [] factor may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

The indictment charges that on October 22, 2010, Defendant knowingly and intentionally possessed, with intent to distribute, MDMA. Mr. Fulgham was caught with the drugs at the Oakland International Airport while flying under the name Andre King Torres, III.

There is a rebuttable presumption in favor of detention if there is probable cause to believe that the defendant committed a drug offense that carries a maximum sentence of at least ten years. *See* 18 U.S.C. § 3142(e)(3)(A). But, as noted above, much or all of the evidence supporting the charge against Defendant has been suppressed. Because the evidence of the crime has been suppressed and it is unlikely that Defendant will be convicted of the crime (unless the suppression is overturned on appeal) the presumption of detention is not triggered in this case. *See United States v. Jay*, 261 F. Supp. 2d 1235, 1239-40 (D. Or. 2003).

However, the Court may still consider the suppressed evidence in determining the weight of the evidence against Defendant. *See id.* (finding that in that case, "consideration of the suppressed evidence [was] warranted under [a] cost-benefit analysis, particularly when applying the statutory release factors that bear on community safety"). While the weight of the evidence is the least important factor when determining whether detention is appropriate, the evidence against Defendant is strong in this case, as he was personally caught at the airport with 8,000 MDMA pills and was flying under an alias.

**B. History and Characteristics of the Defendant**

Defendant reported to Pretrial Services that he was born Andre King Torres, III, in Oakland, California, and that he is 38 years old.[1] However, criminal records indicate that he is 40 years old. Defendant reported that he earned a GED while incarcerated in Coalinga, California, in 1995, and that he attended college for one year in Colorado and attended Heald College for eight months in 1997. He also stated that he earned a fitness certification in 2000.

Defendant did not report any mental or physical health problems and declined to provide information pertaining to illicit substance use.

Defendant stated that he does not maintain contact with his father, and his mother is deceased. He maintains weekly contact with three of his siblings, who live in the bay area, and has rare contact with his fourth sibling, who lives in Modesto. He was married in 1999 but is separated. He has one child with whom he has no contact, and who he believes lives in Nevada or Louisiana, and two children in San Leandro, with whom he maintained daily contact prior to his incarceration. The maternal grandmother of one of his children, Gloria Brown, was interviewed by Pretrial Services. She confirmed that two of his children live in the bay area.

Defendant has no viable sureties, and nowhere to live if he were to be released. He stated that he could live with Ms. Brown, but Ms. Brown stated that he would not be allowed to reside with her. Ms. Brown attended his detention hearing, but had not decided by the end of the hearing whether she was willing to assist with bail. Defense counsel indicated that Ms. Brown

---

[1] At the hearing the Court asked for clarification regarding the Defendant's true name, but it remained unclear how Mr. Fulgham's name could also legally be Andre King Torres, III.

4

intended to seek the advice of an attorney before making her decision. Regardless, it is not clear whether Ms. Brown would be a suitable surety, as she did not seem to know Defendant very well. She lacked accurate information about Defendant's residential history, marital history, travel history, finances, education, and substance abuse history.

Defendant stated that he was self-employed as a promoter at A King Productions for three years in Denver, Colorado, when he worked 20 hours a week. He was also employed at the Colorado Rockies Stadium from 2008 to 2009 as a maintenance worker. He provided no other employment history, although Ms. Brown stated that he had been employed as a fitness trainer at various gyms.

According to Pretrial Services' report, Defendant has used ten aliases and variations of his name, four alternate dates of birth, two social security numbers, and two California driver's licenses. Defendant has an extensive criminal record involving convictions for drug trafficking offenses, giving false identification, and altering or forging a driver's license, and multiple arrests for firearm offenses. These convictions have resulted in his incarceration for most of his adult life. According to Pretrial Services' report, he has had seven prior felony convictions, and six of them were for possessing or distributing drugs. (Defense counsel asserts that he has six, not seven, felony convictions.) In addition, Defendant has failed to appear for court proceedings four times and has had his probation or parole revoked ten times.

Defendant has spent little time out of custody since 1992 to the present. His most recent conviction before being arrested in this case was in 2007, when he received a two-year sentence for a drug-related offense.

**C. Nature and Seriousness of the Danger to Any Person or the Community**

The Court considers the suppressed evidence in determining whether Defendant would be a danger to the community if he were to be released. *See Jay*, 261 F. Supp. 2d at 1240. Defendant's possession of a large quantity of drugs, in light of the fact that he has been convicted of multiple felony drug crimes in the past, shows that he might pose a danger to the community if released. *See United States v. Flores*, 856 F. Supp. 1400, 1401-02 (E.D. Cal. 1994) ("'danger' does not only refer to physical violence, but can apply to any likely conduct that will hurt the

community, i.e., continued criminal activity").  Here, Defendant has been arrested and convicted of fraud and drug related offenses similar to the instant offense, and has committed these offenses while on parole or probation, showing an ongoing pattern of criminal conduct.  The Senate Report states: "The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'"  S. REP. No. 225, 98th Cong., 1st Sess. 23, note 7 at 13.  Defendant's tendency to repeatedly commit similar crimes shows that he poses an unmitigable danger to the community.

In light of the above evidence, the Court finds by clear and convincing evidence that Defendant is a danger to the community, and by a clear preponderance of the evidence that Defendant presents a flight risk, and that no condition or combination of conditions in 18 U.S.C. § 3142(c) will reasonably assure the safety of the community and his appearance.  18 U.S.C. § 3142(e) and (f); *Motamedi*, 767 F.2d at 1406.  As noted above, Defendant has a substantial criminal record, including a felony conviction for using another person's identification, has repeatedly violated his parole and failed to appear on multiple occasions, and has multiple aliases, social security numbers and driver's licenses.  He was arrested for the instant offense while flying under an alias.  In addition, while he has family members in the district, he does not have a place to live if he were to be released, and none of his family members appeared at the hearing.  Defendant suggested that he live in a halfway house, but that is not a viable option because he could walk away from a halfway house at any time.  Nor does Defendant have any sureties willing to assist him with bail.

Defendant cites *United States v. Chen*, 820 F. Supp. 1205 (N.D. Cal. 1992), in support of his argument for release, noting that in that case defendants were released after being charged with "the largest heroin seizure in United States history."  *See* Dkt #23 at 3.  But in *Chen*, conditions could be fashioned to reasonably assure the defendants' appearances, as they had significant ties to their community, family support, and sureties to secure their release bonds.  *See Chen*, 820 F. Supp. at 1209-12 (explaining that defendants had an "exceptionally close" family, and that multiple family members had posted equity in their homes).  Although one of the defendants in that case used a false passport, unlike the Defendant in this case, none of them had

6

numerous aliases, multiple social security numbers, birthdates and driver's licenses.  Nor did the defendants in *Chen* have long criminal histories, numerous parole violations and failures to appear in court.  As such, Defendant's reliance on *Chen* is misplaced.

**D. Due Process**

Defendant further argues that because he has already been in custody for more than a year and a half, continued detention will violate his due process rights. Dkt #23 at 5.  Under some circumstances, excessive pretrial detention may constitute a violation of a defendant's substantive due process rights. *See United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) ("the due process limit on the length of pretrial detention requires assessment on a case-by-case basis").  In *Gelfuso*, the Ninth Circuit wrote that courts should "consider the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued." *Id.*  The court found no due process violation where the defendants had been detained for ten months before their trial, and the record did not support their contention that the government was responsible for the delay in prosecution. *Id. See also United States v. Ailemen*, 165 F.R.D. 571, 578 (N.D. Cal. 1996) (collecting and discussing cases and noting that courts "tended to focus principally on three factors: (1) the non-speculative length of expected confinement; (2) the extent to which the government (the prosecution and/or the court system) bears responsibility for pretrial delay; and (3) the strength of the evidence indicating a risk of flight, a threat to the trial process, and/or a danger to the community.").  Here, as explained above, Defendant has been in custody for over a year and a half, and will remain in custody pending the outcome of the government's appeal of Judge Wilken's grant of the suppression motion.  This is undeniably a long period of pretrial detention.  But Defendant has presented no evidence that the government bears responsibility for his prolonged detention, and, as explained above, there is strong evidence indicating that no conditions can be fashioned to reasonably assure Defendant's appearance or the safety of the community.  Accordingly, continued detention will not violate Defendant's due process rights.

///

///

### III.  CONCLUSION

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

Defendant indicated at his hearing that he may seek to reopen his detention hearing at a later time if his circumstances change.  Defendant is free to do so, provided that he meets the applicable standard.  *See* 18 U.S.C. § 3142(f)(2)(B).

IT IS SO ORDERED.

DATED: July 9, 2012

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge